**SO ORDERED.**

**SIGNED this 08 day of July, 2005.**

_____
**LARRY E. KELLY**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| PAN AMERICAN GENERAL HOSPITAL, | § § | CASE NO. 03-32693-LEK |
| Debtor. | § | |

| | | |
|---|---|---|
| J&S HYPERBARIC SOLUTIONS, L.L.C., | § § | |
| Plaintiff | § § | |
| v. | § § | ADVERSARY NO. 03-3048 |
| HBO ASSOCIATES L.L.C. and PAN AMERICAN GENERAL HOSPITAL, | § § § § | |
| Defendants. | § | |

**ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW
IN SUPPORT OF JUDGMENT**

On April 19 and 20, 2005, came on for trial the above styled and numbered adversary proceeding. The parties appeared through their authorized representatives and through counsel.

1

After considering the evidence and arguments presented, the court made certain findings of fact and conclusions of law orally on the record from the bench pursuant to Fed.R.Bankr.P. 7052. The court also identified certain other issues, invited the parties to submit additional arguments on them in writing, and reserved the right to make additional findings and conclusions and rule on those matters after those post-trial submissions had been considered.

On May 2 - 4, 2005, those additional memoranda and closing arguments were filed. The court has now reviewed those, and makes the following additional findings of fact and conclusions of law.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

As a preliminary matter, it is important to note that the court was hampered somewhat by the failure of Mr. Scott Berkey, an original principal of J&S Hyperbaric Solutions, L.L.C. ("Plaintiff") and admittedly still a principal and employee of Plaintiff, to appear at the trial either in person or through deposition. Key issues about the parties' intentions and whether he signed a critical document [Plaintiff's Exh. 8] were raised at trial, and his absence made those issues difficult to determine at best. Similarly, no one made an appearance, personally or by deposition, for the other party to the original Master Lease, Leastar Capital Group, creating the same difficulty. Thus, no one actually personally involved in the execution of the documents testified. In spite of these evidentiary deficiencies, and considering only what was in fact presented, the court makes the following determinations.

**1. Conversion and the Value of the Generator**

With respect to the value of the generator, it was undisputedly purchased from a local El Paso company [see Plaintiff's Exh. 11], yet no one offered–in person or by deposition–an opinion of value from the seller, the entity perhaps most qualified to give such an opinion. Also, no one presented any evidence as to when the generator was actually purchased, delivered or brought online, and no one testified as to its use, maintenance or the number of hours of it had been operated since then, all facts which presumably would bear on its value.

Based on the evidence that was presented, however, the court finds that Defendant Pan American General Hospital (the "Hospital") effectively converted the generator as of March 18, 2002 [see Plaintiff's Exh. 23]. That date was at most only 133 or so days after the date of the original quote, and most likely was less than 100 days after its original delivery. The court

therefore finds that the value of the generator was $25,000 on the date of the Hospital's conversion. The Hospital is therefore liable to the Plaintiff for $25,000, being the value of the generator that the Hospital refused to turn over after its true owner, the Plaintiff, had made demand on it to make the turn over.

The Plaintiff has also requested, and the court finds that the Hospital is also liable for, interest on that amount from March 18, 2002, to the date of entry of the judgment in this adversary proceeding. *See* **Imperial Sugar Co., Inc. v. Torrans**, 604 S.W.2d 73, 74 (Tex. 1980) ("As a general rule the measure of damages in cases of conversion 'is the value of the property converted at the time of such conversion, with legal interest.'"). No party submitted any authority or evidence on the "rate" of interest applicable so that will be decided when the form of judgment is approved.

The court further finds that Defendant HBO Associates L.L.C. ("HBO") effectively converted the generator no later than July 31, 2003 [see Plaintiff's Exh. 24], when HBO received notice of the Plaintiff's demand and, rather than turn over the generator, continued to lease it to the Hospital. Since there was no competent evidence[1] that the value of the generator on that date was any different than its value as of March 18, 2002 (previously found by the court to be $25,000), the court finds that HBO is also liable to Plaintiff for conversion damages of $25,000, plus interest on that amount from July 31, 2003, to the date of entry of judgment in this adversary.

Because the Hospital and HBO each and together refused to return the generator to the Plaintiff from July 31, 2003, to present, despite each having notice of Plaintiff's claim to the property, they are jointly and severally liable to the Plaintiff for the value of the property converted ($25,000), plus interest accrued on that amount from July 31, 2003, to the date of entry of the judgment in this adversary. The Hospital is solely liable to the Plaintiff for the interest that accrued from March 18, 2002, to July 30, 2003, the period when the Hospital had notice of Plaintiff's demand but HBO did not yet have notice.

---

[1] The court finds Mr. Laurence Juarez's testimony regarding the rate of depreciation in value of the generator that should be applied to be speculative at best, considering his admitted lack of expertise in the valuation of this sort of equipment. Also, as already noted there was no evidence to show date of delivery or any factual information regarding use or maintenance.

3

**2. HBO's Breach of Warranty and Indemnification Obligation**

Section 2A.211(a) of the Texas Business & Commerce Code provides that a lessor of personal property warrants that it has good title to the property being leased–i.e., gives the lessee a "warranty against interference." Specifically, § 2A.211(a) provides that "[t]here is in a lease contract a warranty that for the lease term no person holds a claim to or interest in the goods that arose from an act or omission of the lessor other than a claim by way of infringement or the like, which will interfere with the lessee's enjoyment of its leasehold interest."

While the Lease between HBO and the Hospital in this case contains a general disclaimer of warranties, Texas Business & Commerce Code § 2A.214(d) provides that the implied warranty against interference may be excluded only if the lease contains specific and conspicuous written language doing so.[2] "Conspicuous" is defined as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Tex. Bus. & Comm. Code § 1.201(b)(10) (2005). Examples of "conspicuous" terms are: "a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and . . . language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language." Id.

The court finds that the Lease in question here did not contain such conspicuous language and therefore did not satisfy § 2A.214(d)'s requirements. HBO therefore did not properly disclaim the implied warranty against interference and the Hospital did not waive that warranty. The court therefore finds that HBO breached its implied warranty against interference, and is liable to the Hospital for damages incurred as a result of such breach. Those damages include what the Hospital pays to the Plaintiff on its liability for conversion under the judgment entered in this adversary proceeding. Such damages would normally include the Hospital's attorneys

---

[2] "To exclude or modify a warranty against interference or against infringement (Section 2A.211) or any part of it, the language must be specific, be by a writing, and be conspicuous, unless the circumstances, including course of performance, course of dealing, or usage of trade, give the lessee reason to know that the goods are being leased subject to a claim or interest of any person." Tex. Bus. & Comm. Code § 2A.214(d) (2005).

fees and costs incurred in defending this suit, however the cross claim pleading only sought reimbursement or indemnity for the "sums PAN AMERICAN pays or is found to owe to J&S." Attorneys fees were not awarded to Plaintiff J & S Hyperbaric Solutions, L.L.C. Therefore the court finds that no fees should be awarded in the judgment to the Hospital.

In finding HBO liable to the Hospital, the court does note that the Hospital in its closing arguments states that it did not expressly and formally plead breach of the implied warranty against interference in its cross-claim against HBO, but relies on a theory of contribution or indemnification for recovering damages from HBO.[3] However, in the Hospital's allegations and prayer in its cross-claim in connection with this issue, it states:

> To any extent the Court finds that PAN AMERICAN has converted or owes quantum meruit damages for the use of, any equipment belonging to J&S, for any period of time after February 1, 2002, PAN AMERICAN should be indemnified or made whole *pro tanto*, according to the covenant of quiet enjoyment and warranties of good title to the leased premises and improvements and/or equipment which have been either stated in the lease from HBO, or implied in that lease as a matter of law, or implied in that lease as a matter of mixed law and fact. . . . PAN AMERICAN prays upon its contingent cross-claim against HBO, that HBO be ordered to indemnify or hold harmless or pay contribution to PAN AMERICAN, commensurate with any sums PAN AMERICAN pays or is found to owe J&S, the basis for such contribution, indemnification, or hold harmless, being the express and/or implied warranties of title which emanate from HBO's lease of the equipment to PAN AMERICAN.

The court finds this language, especially the language requesting that the Hospital "be . . . made whole *pro tanto*, according to the covenant of quiet enjoyment and/or warranties of good title to the leased . . . equipment which have been . . . implied in that lease [from HBO]," to be legally

---

[3] The Hospital has provided no authority for its claim of indemnification. An obligation to indemnify arises by contract; in Texas, there is generally no "common law indemnification" except under very limited factual circumstances, which no party has argued are present in this case. *See* **Aviation Office of America, Inc. v. Alexander & Alexander of Texas, Inc.**, 751 S.W.2d 179, 180 (Tex. 1988) ("In **Cypress Creek Utility Service Co. v. Muller**, 640 S.W.2d 860, 863 (Tex. 1982), we held that the comparative negligence statute 'has abolished the common law doctrine of indemnity between joint tortfeasors even though the statute does not expressly mention that doctrine.' The only remaining vestiges of common law indemnity involve purely vicarious liability or the innocent product retailer situation."). Here, the Lease between HBO and the Hospital does not provide that HBO indemnifies the Hospital under any circumstances, and there is no evidence of any other agreement between the parties.

5

sufficient to state a cause of action against HBO for a declaratory judgment that HBO breached the warranty against interference and is liable to the Hospital for any amount it pays on a judgment in favor of the Plaintiff on its conversion claim, plus the Hospital's attorneys fees and costs incurred in defending this suit. Such an interpretation of the pleadings is fair--HBO clearly had notice, since the issue was included in the Hospital's pre-trial order and attached proposed findings of fact and conclusions of law, and inasmuch as HBO expressly addressed the issue without objection in both its answer to the cross-claim and its post-hearing arguments. *See* Fed.R.Civ.P. 8 (a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and "[a]ll pleadings shall be so construed as to do substantial justice"); *see also* **Swierkiewicz v. Sorema N.A.**, 534 U.S. 506 (2002) (to provide a short and plain statement of the claim showing that the pleader is entitled to relief, as is required to satisfy pleading requirements, a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests).

To the extent necessary or appropriate, the court alternatively finds that even if not alleged in the pleadings, the claim against HBO for breach of warranty against interference was tried by the parties by consent, such that the Hospital's pleadings may be considered to be amended to conform to the arguments and evidence on the issue. Federal Rule of Civil Procedure 15(b) provides, in pertinent part:

> **Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . .

*See also* **Falls Industries, Inc. v. Consolidated Chemical Industries, Inc.**, 258 F.2d 277 (5th Cir. 1958) (amendments of pleadings to conform to proof are permitted under this rule in order to bring pleadings into line with issues actually developed during the trial, even though the issues were not adequately presented in the pleadings); *see also* **H.B. Fuller Co. v. Kinetic Systems, Inc.**, 932 F.2d 681 (7th Cir. 1991) (parties impliedly consented to litigate revocation of acceptance issue with regard to count of complaint entitled "Contract Rescission" where parties

6

explicitly referred to revocation of acceptance issue and plaintiff's counsel did not object when defendant framed issue in terms of revocation of acceptance). Moreover, if an issue is tried by consent, no formal amendment of the pleadings is necessary. **Proctor v. Gissendaner**, 579 F.2d 876 (5th Cir. 1978), *opinion supplemented by* 587 F.2d 182 (5th Cir. 1979); *accord,* **Bettes v. Stonewall Ins. Co.**, 480 F.2d 92 (5th Cir. 1973) (failure to move to amend pleadings to conform to evidence did not necessarily preclude claim of litigation of issue by consent).

## SUMMARY

Based on the foregoing, the court finds and concludes:

1. The Hospital and HBO are jointly and severally liable to the Plaintiff for $25,000 for conversion of its property, plus interest on that amount from July 31, 2003, to the date of entry of the judgment in this adversary proceeding.

2. The Hospital alone is liable to the Plaintiff for the interest on $25,000, being the value of the property converted, that accrued between March 18, 2002, and July 30, 2003.

3. HBO is liable to the Hospital for any and all amounts it pays Plaintiff under the judgment entered in this adversary including costs of court.

4. All relief requested but not expressly granted herein or in the court's findings of fact and conclusions of law announced at the conclusion of the trial, should be denied.

The Plaintiff is directed to submit a form of judgment, with approval of all parties as to form, in accordance with these findings and conclusions and those made orally from the bench at the conclusion of the trial along with authorities if there is a disagreement as to the interest rate applicable for pre-judgment interest being awarded herein.

# # #